## JASPER STATE BANK v. GOODRICH.
### No. 3201.

Court of Civil Appeals of Texas.
Beaumont.

June 17, 1937.

Rehearing Denied July 20, 1937.

Richardson & Lanier, of Jasper, for appellant.

Synnott & Smith, of Jasper, for appellee.

WALKER, Chief Justice.

This was a suit in district court of Jasper county by appellant, Jasper State Bank, against appellee, W. F. Goodrich, for judgment on two promissory notes, one for $2,925.63 and the other for $187.45, with interest, and to foreclose a deed of trust lien given by appellee to appellant to secure the payment of the first note on the following described tract of land, to wit: "All that certain land being about 300 acres more or less in 440 acres of the Benj. Lindsey League Survey in Sabine County, Texas, said 440 acres being all of a 640 acre subdivision in a square located in the N.W. corner of said Lindsey League, less 200 acres, known as the J. D. McNealy place or the old Homestead tract of Wm. Hines, said 200 acres out of said 640 a. subdivision located in the N.W. corner of said 640 acre subdivision with opposite sides parallel and equal, the North and South lines being in length, twice as long as the East and West lines." On trial to the court without a jury judgment was entered in appellant's favor against appellee for the amount of the notes, but denying it a foreclosure of its lien, on the conclusion that the lien was void because of a fatal defect in the description of the mortgaged land.

■ ■ That ruling of the court was error for two reasons: First, it is now the law of this state that the mortgagor in a foreclosure suit cannot take advantage of the indefiniteness of the description in his mortgage. The mortgagee is entitled to a foreclosure on whatever interest was given him by his mortgage. In Battle v. Wolfe, 283 S.W. 1073, 1082 (writ refused), speaking for the Amarillo Court of Civil Appeals, Mr. Chief Justice Hall said: "When the objection is merely to the indefiniteness of the description, it does not lie with the mortgagor to say that he conveyed the property by a description so loose or indefinite that no title could pass upon a foreclosure sale of the property. If nothing passes, it is the misfortune of the mortgagee, but the mortgagor is not hurt; if anything does pass, the mortgagee is entitled to the benefit of the mortgage as it stands.' 1 Jones on Mortgages, § 65; 19 R.C.L. 287, § 61." In Walter Connally & Co. v. Continental State Bank & W. F. Collins, 189 S.W. 311, 313, the Texarkana Court of Civil Appeals said: "As between Collins and the appellant, the former could not say that such a description was void for uncertainty. 'Brice v. Sheffield, 118 Ga. 128, 44 S.E. 843; Mann et al. v. State, 116 Ind. 383, 19 N.E. 181; 1 Jones on Mortgages, §§ 65 and 66; 3 Devlin on Deeds, § 1012."

■ ■ But, if the proposition of law announced by the cases cited above is not the law of this state, then for this second reason, on the facts of this case, the description of the land in appellant's deed of trust was not void for uncertainty. The facts are as follows: Appellant acquired this note and lien from the Brookeland State Bank. Appellee, a stockholder and director in that bank, owed it the note described above as Note No. 1. To secure his bank in the payment of that note, he executed to it the deed of trust in issue, writing the deed of trust in his own hand-writing, and delivered it to his bank. Afterwards, the note and lien were transferred to appellant and, after that transfer, both the note and the lien were renewed by appellee. As shown by evidence tendered by appellant but excluded on appellee's exceptions, at the time he executed the deed of trust to the Brookeland State Bank, and continuously thereafter until after this suit was filed, appellee owned an undivided interest of 293⅔ acres in the 440 acres described in his deed of trust.

Appellee concedes that the description in the deed of trust would have been sufficient but for the word "about" immediately preceding "300 acres," and the words "more or less" immediately following the words "300 acres." We shall not discuss these "objectionable words" pointed out by appellee.

Appellee also concedes that the description could have been aided by extraneous evidence, showing the extent of his interest in the 440 acres of land, if it had contained words "something like 'all my interest in the survey.'" On the facts of this record the presumption that appellee dealt with his bank in conformity with law and duty will supply the words suggested by appellee. That rule is thus stated by 9 Ency. of Evidence 917: "The general maxim that all things are presumed to have been rightly done is applied in many ways in the form of variously expressed presumptions, all in effect amounting to the same thing, that misconduct and illegality of any kind will not ordinarily be presumed but must be proved." It must be presumed that appellee, as one of its directors, in dealing with his bank, dealt fairly and justly, and that he did not tender them something he

did not own. Had he owned the entire 440 acres, then his deed of trust, though it be conceded fatally defective, could have been defended on the ground that his mistake in writing the description was honestly made, but, as he owned only an undivided interest, known to him to be an undivided interest, it must be presumed that he dealt honestly with his bank, and that he was conveying to his trustee for the benefit of his bank the interest owned by him, which was an undivided interest of 293⅔ acres, as shown by the excluded testimony. The actual interest owned by appellee in the 440 acres was accurately described as "all that certain land being about 300 acres more or less in 440 acres."

■ To give effect to the contract of the parties, the law can indulge the presumption that the grantor "intends to convey the tract to which he has title," 18 C.J. 278, when that presumption does not do violence to the language of the deed. To indulge that presumption in this case does no violence to the description in the deed of trust, but gives effect to every word of the written description, and effectuates the intent of the parties, and an honest discharge of the duties of appellee's fiduciary relation to the Brookeland Bank. On this point, construing the following description: "Lucius I. Holman having died, and E. A. Blount and J. E. Harrison (husband of the intervener, Harriett J. Harrison) having been appointed administrators of his estate, they conveyed to W. H. Ford, for a recited consideration of $567 cash (quoting from the deed), '810 acres of land, part of the Nathaniel Hyden league, situated on the west side of Ayish Bayou about thirty miles south of the town of San Augustine, and the said 810 acres hereby conveyed being an undivided interest in and to a tract of eighteen hundred and sixty-four acres of the said Hyden survey, said eighteen hundred and sixty-four-acre tract being all of the east half of the said Hyden league, except a tract 1,400 varas square in the northeast corner of said league, which was conveyed by W. W. Holman to J. G. Woldert,'" Judge Reese, speaking for the Galveston Court of Civil Appeals in Holman v. Houston Oil Co., 152 S.W. 885, 891, said: "The third question presented by the appeal is, assuming that the Holman deed only conveyed an undivided 810 acres, whether this was to be out of the entire league; that is, 405 out of the west half and a like quantity out of the east half. The court found, and so instructed the jury, that the deed conveyed only land in the east half. The evidence was that neither John W. Holman, W. W. Holman, Sr., nor W. W. Holman, Jr., ever owned or claimed to own any part of the west half of the Hyden league, but that John W. Holman owned the east half, which he conveyed to W. W. Holman, Sr., and that whatever of this half league he owned at his death descended by inheritance to W. W. Holman, Jr. The court did not err in holding that in the light of these facts the deed to Lucius I. Holman was intended to convey 810 acres in the east half of the league."

■ Again, to effectuate the intent of the parties, when it can be done without doing violence to the written description in the deed, reference may be had to the facts as they existed when the description was written. On this point we quote as follows from 18 C.J. 280: "In order to ascertain the intention of the parties in respect to the property conveyed, reference may be had to the state of facts as they existed when the instrument was made and to which the parties may be presumed to have had reference." Judge Gill, speaking for the Galveston Court of Civil Appeals, gave effect to this proposition of law in Bell v. Wright, 59 S.W. 615, 616. In that case, Mrs. Wright sold certain property by lot and block number to Mr. Bell. The lots as originally surveyed did not go to her fence, but she in fact sold to her fence, and the grantee accepted title believing that the land acquired by him extended to the fence. Later, he contended that he acquired land only to the original boundary of the lots. Denying that contention, Judge Gill said: "We think the controlling inquiries are: What property was intended to pass by the deed? What did Wright buy? What did Mrs. Bell sell? These questions may be justly answered, not by resorting to a part of the description, but by construing the entire description in the light of the facts attending the transaction."

■ Where the description is doubtful or uncertain, again quoting from 18 C.J. 280, "the court will as nearly as possible assume the position of the parties, and interpret their words in the light of the circumstances surrounding the transaction." On that point the Supreme Court of Tennessee, in Gernt v. Floyd, 131 Tenn. 119, 174 S.W. 267, said: "Where a degree

of uncertainty arises from the descriptive words, as to their application to a subject-matter, the court should assume the position and view the circumstances of the contracting parties, and hold the deed valid if from a consideration of its recitals and the presumptions naturally arising a sufficient description may be found or assigned. Calton v. Lewis, 119 Ind. 181, 21 N.E. 475." In Scott v. Dunkle Box, etc., Co., 106 Ark. 83, 152 S.W. 1025, 1026, the Supreme Court of Arkansas said: "The rule is well established that a deed is not to be held void for uncertainty, if by any reasonable construction it can be made available. Dorr v. School District, 40 Ark. 237; Walker v. David, 68 Ark. [544] 546, 60 S.W. 418. And when the description of the land as given in the deed is doubtful, the courts, in their endeavor to arrive at its meaning, should assume the position of the parties. The circumstances of the transaction should be carefully considered, and in the light of these circumstances the words should be read and interpreted. Walker v. David, supra; 2 Devlin on Deeds (3d Ed.) 1012. It was said in the case of Dorr v. School District, supra, that parol evidence cannot be admitted to contradict or control the language of a deed; but latent ambiguities may be explained by such evidence." Again, when no violence is done to the written description, a prior deed in the chain of title may be looked to to identify the interest conveyed where the description is uncertain or ambiguous. Davis v. Seybold (C.C.A.) 195 F. 402.

On the authorities cited, the lower court erred in excluding the deeds tendered by appellant—both the deeds into appellee before this suit was filed and the deed out of him subsequent to the filing of this suit—showing the undivided interest owned by him in the 440 acres at the time he executed his deed of trust to the Brookeland State Bank.

To avoid multiplicity of suits we are reversing and remanding this cause with the suggestion to appellant that it amend its petition by alleging that the interest covered by appellee's deed of trust was an undivided interest of 293⅔ acres and that it was the intent of the parties in the execution and delivery of the deed of trust that it should cover his undivided interest.

For the reasons stated the judgment of the lower court is reversed and the cause remanded for a new trial.